**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

_____

No. 24-9000

_____

JOHN KOEHLER,

Petitioner/Appellant,

v.

LAUREL HARRY, Secretary,
Pennsylvania Department of Corrections, et al.,

Respondents/Appellees.

On Appeal from the Order of the
United States District Court for the Middle District of Pennsylvania,
entered May 14, 2015, No. 3:12-cv-00291 (Capital Habeas Corpus)

**APPELLANT'S REPLY IN SUPPORT OF
APPLICATION FOR CERTIFICATE OF APPEALABILITY**

**\*\*\* CAPITAL CASE \*\*\***

TRACY ULSTAD
Assistant Federal Defender
Federal Community Defender Office
  for the Eastern District of Pennsylvania
Curtis Building, Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

_Counsel for Appellant John Koehler_

Petitioner John Koehler, through undersigned counsel, respectfully submits this Reply in support of his Application for Certificate of Appealability (COA) filed on January 8, 2025. The Commonwealth's response in opposition to Mr. Koehler's COA Application is a near copy of the District Court's decision denying habeas relief and largely ignores the arguments that Mr. Koehler raised in his COA Application.

Mr. Koehler submits this Reply to the Commonwealth's arguments, particularly in light of the Supreme Court's recent decision in *Glossip v. Oklahoma*, 145 S. Ct. 612 (Feb. 25, 2025).

## I.    *BRADY* AND *NAPUE/GIGLIO* CLAIMS.

As detailed in Mr. Koehler's COA Application, the prosecution concealed exculpatory evidence and allowed false testimony about the concealed evidence to go uncorrected. Mr. Koehler's co-defendant, William Curley, admitted he killed both victims but claimed he did so at Mr. Koehler's insistence and direction. Curley's good friend, Kirk Schrader, an admitted participant in the crime, testified at trial and reinforced Curley's claims. However, the jury was unaware that Schrader had entered into an agreement with the Commonwealth to shield himself from prosecution because (1) the prosecution failed to disclose the agreement; and (2) the prosecution elicited false testimony at trial that Schrader had received no favors or promises in exchange for his testimony. *See* COA App. 7-12, 23-32.

Following his trial testimony, Schrader successfully shielded himself from prosecution by proving that he had in fact entered into a non-prosecution agreement with the Commonwealth. The existence of this agreement was established and upheld following a hearing weighing the testimony of Schrader's counsel against the testimony of the prosecution. COA App. 13-16. Nevertheless, the District Court accepted the state court's unreasonable factual determination that there was no non-prosecution agreement at the only time it mattered: during Mr. Koehler's trial. DCO at *45, 48.

Mr. Koehler supported the *Brady* and *Napue/Giglio* claims in his COA Application with extensive evidence and legal argument demonstrating that this finding was unreasonable in law and fact. The Commonwealth effectively ignores these arguments. Instead, the Commonwealth argues this Court should reject Mr. Koehler's *Brady* and *Giglio/Napue* claims because the state court determined that "Schrader believed the non-prosecution agreement had been revoked at the time of Koehler's trial." Resp. 13, 15.

Contrary to the Commonwealth's assertions, the Supreme Court's recent decision in *Glossip v. Oklahoma*, 145 S. Ct. 612 (Feb. 25, 2025), makes clear that Schrader's subjective beliefs are irrelevant. In *Glossip*, the lower court concluded that the witness had not falsely testified because the witness was "more than likely in denial of his mental health disorders." *Id*. at 630. The Supreme Court rejected

this determination because, when it comes to the prosecution's duty to correct false testimony, the witness's "beliefs are beside the point. What matters is that his testimony was false and a prosecutor knowingly let it stand nonetheless." *Id*.

Here, as in *Glossip*, the witness's testimony was objectively false and the prosecution had an obligation to correct it. Schrader claimed he had not received "any favors" or "any promises" in exchange for his testimony, but the record developed after trial established that a promise had in fact been made. Not only did the prosecution fail to correct the record, but they also doubled down by presenting similarly false testimony from prior District Attorney Robert Fleury, falsely attesting that he had never "promise[d] [Schrader] anything with respect to his testifying whatsoever." NTT 4/4/96 AM at 69-72.

As to materiality, the Commonwealth again relies solely on the District Court's erroneous analysis and corresponding conclusion that the false testimony caused no prejudice because "the Commonwealth presented significant evidence independent of Schrader's testimony." Resp. 15. The Commonwealth does not engage with Petitioner's argument that pursuant to longstanding Supreme Court precedent, materiality "is not a sufficiency of the evidence test." *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995). Instead, the appropriate analysis asks whether "there is a reasonable likelihood that correcting [Schrader's and former District Attorney

Fleury's] testimony would have affected the judgment of the jury." *Id.* at 628 (citing *Napue*, 360 U.S. at 271).

Here, the answer to that question is a resounding yes. Schrader was a critical witness at trial. He was central to the prosecution's claims that Mr. Koehler orchestrated the victims' murders and was not merely caught up with the wrong people or in the wrong place at the wrong time. And Schrader's testimony reinforced allegations made by Curley, thus bolstering the credibility of the actual killer. *See* Resp. at 2 ("Curley testified against Koehler pursuant to an agreement with the Commonwealth."); *see also* NTT 3/25/96 AM at 22 (Curley initially concealed Schrader's participation in the crime when questioned by police).

Like the witness in *Glossip*, Schrader was an admitted participant in the crime, albeit one who minimized his awareness and involvement. In both cases, the suppressed evidence and the uncorrected false testimony undermined the witness's credibility, particularly as it related to the witness's purported role in the offense. *See Glossip*, 145 S. Ct. at 628 (finding false testimony was material in part because it undermined prosecution's theory that defendant coerced witness to commit crime).

*Glossip* shows that the District Court's analysis of *Napue* was fundamentally flawed in another way as well. In *Napue* claims, "the prosecutor's failure to correct [the] false testimony is the relevant error, so the Court asks whether a correction

could have made a material difference." *Glossip*, 145 S. Ct. at 631. Here, that

means the prosecution would have had to correct, in front of the jury, false

testimony of both its key witness and the former prosecutor in the case. Such

embarrassing corrections would have undermined the credibility of the

prosecution's entire case. *See id.* ("Had the prosecution corrected [Schrader] on the

stand, his credibility plainly would have suffered."). The correction would have

called into question Schrader's assertion that Mr. Koehler orchestrated the crime by

revealing to the jury not just the extent of what Schrader stood to gain by satisfying

the prosecution, "but also that [Schrader] was willing to lie to them under oath." *Id*.

"Such a revelation would be significant in any case, and was especially so here

where [Schrader] was already 'nobody's idea of a strong witness.'" *Id*. But neither

the Commonwealth nor the District Court grappled with the resounding impact of

the *Napue* violations.

Additionally, *Glossip* demonstrates that the District Court erred in its

materiality analysis by refusing to consider the impact of the due process violations

as they related to Mr. Koehler's punishment or cumulatively with other errors that

occurred in his case. *See* D. Ct. ECF No. 107 at *24-25 (denying Rule 59 relief).

This included not just the erroneous instructions on intent, argued below, but also

Mr. Koehler's allegation that the Commonwealth failed to disclose incentives to his

co-defendant, Curley. *See* D. Ct. ECF No. 1 at *13-23.

5

The *Glossip* Court recognized that the "prejudice analysis requires a 'cumulative evaluation' of all the evidence, whether or not that evidence is before the Court in the form of an independent claim for relief." 145 S. Ct. at 629 (quoting *Kyles*, 514 U.S. at 441). The Court thus considered materiality in light of the prosecution's suppression of additional evidence and its improper attempt to influence Sneed's testimony. *Id*. The District Court here erred in its narrow consideration of the harm from the due process violations.

Accordingly, for the reasons discussed above and in the COA Application, the District Court's resolution of this claim is at least debatable.

## II.    JURY INSTRUCTIONS CLAIM.

The trial court's instructions in this case erroneously suggested that Mr. Koehler could be convicted of first degree murder based on his accomplice's or co-conspirator's state of mind, regardless of whether Mr. Koehler shared that same state of mind. Rather than responding to Mr. Koehler's argument that the District Court's decision is debatable, the Commonwealth appears to have simply copied that decision verbatim. *Compare* Resp. 18-19 *with* DCO at *98.

As an initial matter, the Commonwealth's recitation of the applicable legal standard is somewhat misleading. *See* Resp. 18. In *Boyde*, the Supreme Court held that "the proper inquiry . . . is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that is unconstitutional. *Boyde v.*

*California*, 494 U.S. 370, 380 (1990). Though the Court stated that this inquiry is not "dependent on how a single hypothetical 'reasonable' juror could or might have interpreted the instruction," the Court also made clear that "a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction." *Id.* This Court subsequently clarified that the *Boyde* standard focuses on the distinction between a reasonable likelihood and a mere possibility, rather than the distinction between all jurors and fewer than all jurors:

> It may appear that *Boyde* focuses on the confusion of the entire jury and not a single juror. We avoid that avenue of analysis. Its logical end is a standard that requires all twelve jurors to be confused by the jury instruction in a capital sentencing case. ***But would the taint of confusion be any less to a defendant if but eleven (or fewer) jurors were confused?*** We believe instead that the Supreme Court focuses more aptly on the likeliness legal standard for an allegedly confusing instruction.

*Hackett v. Price*, 381 F.3d 281, 291 n.6 (3d Cir. 2004) (emphasis added).

Accordingly, the inquiry relevant to the instant claim is not, as the Commonwealth would have it, whether "all of the jurors were sufficiently confused by the disputed instruction," Resp. 18, but rather "whether there is a reasonable likelihood (as opposed to merely a possibility) that jurors have applied the challenged instruction" in an unconstitutional manner. *Hackett*, 381 F.3d at 291; *see also Smith v. Horn*, 120 F.3d 400, 411 (3d Cir. 1997) ("The proper inquiry is "'whether there is a *reasonable likelihood* that the jury has applied the

challenged instructions in a way' that violates the Constitution.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (quoting *Boyde*, 494 U.S. at 380)) (emphasis in *Smith*).

For the reasons Mr. Koehler explained in his application, reasonable jurists would debate the District Court's conclusion that the jury charge was clear and correct when read in its entirety. *See* COA App. 59-65. Though the District Court in its opinion and the Commonwealth in its response both state in conclusory fashion that "it is clear that, in deciding whether Koehler was guilty of conspiracy, the jury had to determine whether he had the specific intent to kill," Resp. 19, DCO *98, neither cites any portion of the jury charge supporting this statement. This is presumably because no such portion exists; neither the conspiracy nor the accomplice liability charge in this case referenced or explained the intent required for first degree murder.

Hearing these vicarious liability instructions in combination with the court's improper instruction regarding specific intent for first degree murder, the jury likely understood (wrongly) that they could convict Mr. Koehler of first degree murder under an accomplice liability or conspiracy theory so long as Mr. Koehler agreed that Curley would engage in an intentional act that resulted in a victim's death, regardless of whether Mr. Koehler specifically intended that death. This Court has repeatedly found that instructions like these violate due process, *see, e.g.*, *Laird v. Horn*, 414 F.3d 419, 427 (3d Cir. 2005); *Tyson v. Superintendent*

*Houtzdale SCI*, 976 F.3d 382, 394 (3d Cir. 2020); *Smith*, 120 F.3d at 414. The

Commonwealth provides no reason why Mr. Koehler has failed to demonstrate

"that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000).

In addressing the ineffectiveness portion of Mr. Koehler's jury instructions

claim, the Commonwealth again parrots the District Court's opinion, *compare*

Resp. 20 *with* DCO at *99, and again provides no argument as to why "it cannot be

said that this decision was debatable or wrong," Resp. 20. Because reasonable

jurists would debate the District Court's conclusion that Mr. Koehler's trial counsel

did not perform deficiently in failing to clearly object to the erroneous instructions,

a COA is warranted on this claim.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM FOR FAILURE TO INVESTIGATE AND PREPARE A MITIGATION PRESENTATION.

In responding to Mr. Koehler's claim that he was prejudiced by counsel's

failure to investigate and prepare any mitigation phase presentation, the

Commonwealth again repeats verbatim the District Court's decision. *Compare*

Resp. 21 *with* DCO at *50. The Commonwealth fails to engage with any of the

arguments Mr. Koehler presented in his application as to why this decision is

debatable among jurists of reason, including the District Court's application of the

wrong standard to assess prejudice in this case. *See* COA App. 73-74 ("The prejudice inquiry asks not whether the outcome *would have been* different, but whether there is 'a reasonable probability' that the outcome would have been different but for counsel's failures.") (quoting *Strickland*, 466 U.S. at 694). For all the reasons stated in Mr. Koehler's application, and particularly in light of the Commonwealth's failure to meaningfully respond, this Court should issue a COA on this claim.

## IV.    CUMULATIVE PREJUDICE CLAIM.

Again, the Commonwealth copies verbatim the District Court's decision to deny Mr. Koehler relief on his claim of cumulative prejudice. *Compare* Resp. 24 *with* DCO at *104. For the reasons stated in Mr. Koehler's application, the District Court's decision is debatable, and the Commonwealth does not provide any arguments to the contrary. Had the *Brady* evidence been disclosed, the *Napue/Giglio* errors corrected, and the jury properly instructed, there is a reasonable probability that the jury would have reached a different verdict on the charge of first degree murder. A COA is warranted on this claim.

## CONCLUSION

For all the reasons set forth herein and in Mr. Koehler's Application for

Certificate of Appealability, this Court should grant a COA and any other relief

that this Court deems appropriate.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Tracy Ulstad
TRACY ULSTAD
Assistant Federal Defender
Federal Community Defender Office
   for the Eastern District of Pennsylvania
Curtis Building, Suite 545 West
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

*Counsel for Appellant John Koehler*

</div>

Dated: March 21, 2025

## CERTIFICATE OF SERVICE

I, Tracy Ulstad, Assistant Federal Defender, Federal Community Defender

Office for the Eastern District of Pennsylvania, hereby certify that on March 21,

2025, I caused a copy of the reply to be filed and served electronically through

Electronic Case Filing on:

<div align="center">

Gregory J. Simatic
Deputy Attorney General
Pennsylvania Office of Attorney General
Criminal Law Division, Appeals Section
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

</div>

/s/ Tracy Ulstad
Tracy Ulstad
Assistant Federal Defender